UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

M.P.G. (XXX-XX-3866)      CIVIL ACTION NO. 16-cv-0040

VERSUS      JUDGE HICKS

SOCIAL SECURITY ADMINISTRATION      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

    M.P.G. ("Plaintiff") was born in 1966 and has a high school education. She worked for several years on the cleaning staff at a local riverboat casino. She said she stopped working in 2008, primarily because fumes and chemicals used in the workplace aggravated her asthma, and she could not find suitable alternative employment. She applied for disability benefits based on an alleged onset date of August 5, 2008.

    ALJ Kelley Day held a hearing and issued a written decision. She found that Plaintiff was not disabled within the meaning of the regulations. The Appeals Council denied a request for review, which made the Commissioner's decision final. Plaintiff then filed this civil action pursuant to 42 U.S.C. § 405(g) to seek judicial review. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Determination of Disability**; **The Five-Step Process**

    The Social Security Act entitles certain persons to disability benefits or supplemental security income benefits if they are disabled within the meaning of the law. The Act defines

disabled persons as those who are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  The Act requires the Commissioner to establish by regulation uniform standards for the adjudication of claims.

Disability Insurance Benefits (Part 404) eligibility and amount are tied to the applicant's earnings history. Supplemental Security Income or SSI (Part 416) has no minimum earnings prerequisite and pays a fixed monthly benefit to all recipients.  Plaintiff applied for both forms of benefits.  The law governing the determination of disability is the same under either program. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989).

The Commissioner has developed a five-step sequential evaluation to make the disability assessment:

1. The claimant must not be engaging in substantial gainful work activity.

2. The claimant must have a "severe" impairment as defined by Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

3. If the impairment meets or equals an impairment listed in Appendix 1 of the regulations the person will be considered disabled without consideration of vocational factors.

4. A claimant capable of performing his past relevant work is not disabled.

5. If a claimant cannot perform his past work, other factors including age, education, work experience, and residual functional capacity ("RFC") must be considered to determine if he can perform other work.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520 (DIB); and 416.920 (SSI). The claimant has the burden on the first four steps of the analysis. Bowen v. Yuckert, 107 S.Ct. 2287, 2294 n. 5 (1987). The burden shifts to the Commissioner on the fifth step. Id. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

**The ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial work activities since her alleged onset date. He found at step two that she suffered from asthma and diabetes, which were severe impairments but not so severe as to meet a listing at step three. She then assessed Plaintiff's RFC and found that Plaintiff could perform light work as defined in the regulations, except that she must avoid unprotected heights and dangerous moving machinery, is limited to frequent handling with the left dominant hand, and can have no more than an occasional exposure to gases, fumes, other pulmonary irritants, and excessive temperatures. The ALJ also found that Plaintiff is not able to drive as part of a job.

The ALJ heard testimony from a vocational expert ("VE") about Plaintiff's past work and the demands of other jobs. The ALJ then found at step four that Plaintiff was not able to perform her past relevant work, but she found at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy. The representative jobs identified were basket filler and counter clerk (both light work), as well as document preparer

and election clerk (sedentary jobs). Accordingly, Plaintiff was found to be not disabled within the meaning of the regulations.

**Standard of Review; Substantial Evidence**

Plaintiff raises several arguments on appeal. This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Hearing Loss**

Plaintiff's principle grounds for claiming disability relate to limitations allegedly caused by diabetes and asthma, but she claims to suffer from other impairments that the ALJ's decision either discounted or did not address. One of those is hearing loss. Plaintiff testified at the hearing that she has ringing in her left ear that comes and goes, and ringing in her right ear that never stops. . Plaintiff said it required her to sometimes ask people to repeat themselves. Tr. 67. Plaintiff did not, however, list hearing loss or tinnitus on the application form that asked her to list all physical or mental conditions that limited her ability to work. Tr. 173.

The medical records show that Plaintiff complained at a May 2012 doctor visit that she had tinnitus in both ears for the past month, but she denied hearing loss. Tr. 234. Plaintiff's hearing was tested in October 2012. The conclusion was: "Results indicate patient has essentially normal hearing bilaterally." Tr. 245. Plaintiff complained at a visit in January 2013 that she still had tinnitus. The physician noted that Plaintiff had normal hearing and discussed tinnitus coping strategies with her. Tr. 252-54.

At step two, deciding whether a claimant suffers from severe impairments, an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). It does not appear the ALJ specifically discussed the hearing issue in her written decision, but she did discuss several other claims of impairment under the Stone standard.

The ALJ wrote that she found any other conditions not mentioned in her specific findings did not meet the Stone standard. Tr. 20-21. The court finds that there is substantial evidence to support that conclusion. The medical records showed normal hearing but some aggravation from tinnitus, but not to a level that would be expected to interfere with the ability to work, particularly with respect to the jobs identified by the VE.

**Anxiety**

Plaintiff testified at the hearing that she has anxiety attacks "every other day" that are usually triggered by an asthma attack. She said that when she has an attack she gets

shortness of breath and feels like the walls are closing in on her. Tr. 65-66. She offers a short argument in her appellate brief that she suffers from three to four anxiety attacks per week, and the VE testified that a requirement for additional breaks during the workday (to accommodate such attacks) would preclude all employment.

The Commissioner points out that Plaintiff did not list anxiety among her medical conditions on her application. Tr. 173. There is also scant evidence of such problems in the medical records. Plaintiff did state during one doctor visit that she had started having panic attacks, and the physician prescribed medication. Tr. 234, 236. Plaintiff has not pointed to any other evidence of anxiety problems in her medical records or mental status exam. Tom Ray, Ph.D., a state agency medical consultant, reviewed the medical records and found that any anxiety problem did not significantly limit the physical or mental ability to do basic work activities. Tr. 91. The ALJ discussed the anxiety claim at length and, after reviewing the above evidence, found that it was not a severe impairment because it did not cause more than minimal limitation in the ability to perform basic work activity. Tr. 19-20.

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." Lighthead v. Colvin, 820 F.3d 776, 779 (5th Cir. 2016). An ALJ's findings on credibility and the extent of the effect of subjective conditions is, because of the ALJ's firsthand observation of the claimant, entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The only evidence of such frequent anxiety attacks came from Plaintiff's testimony, which was not well supported by the objective medical records or the

finding of the state agency consultant. The ALJ was within her discretion to reject the subjective complaint based on the medical record evidence.

**Asthma**

Plaintiff listed asthma in her application for disability, but the medical records reflect only two asthma problems during the six years covered by the decision. Plaintiff reported in March 2010 that she had been experiencing an asthma attack for six days. She admitted that she had been off her medications for the past year due to financial issues. She said her last prior attack was in September 2009, and she had never been hospitalized or intubated for her asthma. Tr. 259. She was prescribed Albuterol and other medications. Tr. 261.

Plaintiff reported in February 2012 that, with a change in the weather, she had an increase in coughing fits and some shortness of breath. She had been using her inhaler two or three times a day for the past six weeks. The physician had Plaintiff demonstrate the use of her inhaler, and Plaintiff was using it incorrectly. She was taught the correct way, and her breathing improved within minutes. Tr. 226-27. A chest X-ray showed that both lungs were clear. Tr. 228. Plaintiff returned in a week and said she was feeling "a little better," her cough had improved, and she was not having to use her inhaler as frequently. Tr. 230. Plaintiff had some follow-up exams afterwards. Her asthma was stable during those visits, and she was provided medication refills.

Plaintiff testified at her hearing that she takes "breathing treatments" at home and then goes to the hospital if she has problems. Tr. 39. Plaintiff said her asthma was aggravated by irritants like smoke or perfume, and she said she had three to five asthma attacks in an

average week.  She treats them with her inhalers and, if that does not work, she uses a breathing machine (Nebulizer).  Plaintiff said she must use the machine four to five times a week, for 20 minutes at a time.  Tr. 58-59.  After a treatment, she has to lie down for five or six hours.  Tr. 60.

The ALJ did not discount Plaintiff's claim of asthma.  She found that it was a severe impairment that affected Plaintiff's ability to work.  The ALJ reviewed the medical history, including a consultative pulmonary function study from July 2014, and she considered Plaintiff's testimony about the breathing treatments.  The ALJ found: "Despite a history of asthma, the claimant does not have asthma attacks at the frequency or intensity at which she describes."  The ALJ found no evidence to support the claim that Plaintiff went to the emergency room three or four times a year for asthma attacks, and she noted that the chest X-ray and most inspections of the lungs were recorded as normal.  The pulmonary findings were not significant.  Tr. 22-23.

Plaintiff argues that the ALJ erred when she did not find that the asthma attacks require frequent breathing treatments that necessitate too many work breaks to allow employment. The VE did testify that a person who required additional breaks for the number of breathing treatments claimed would not be able to work, but the ALJ specifically rejected the claim that Plaintiff's asthma mandates frequent breaks for treatments.  She noted that the pulmonary study "does not mention anything regarding breaks, nor do the results interpret such." The ALJ also noted activities of daily living that were inconsistent with the extent of breathing difficulty claimed.  Tr. 23.  There were credible evidentiary choices for the ALJ

to make, including acceptance of the objective medical evidence and medical history over the subjective claims of a much more serious limitation than was supported by that evidence. The ALJ was certainly not required to accept the unsupported claim that Plaintiff required four breathing treatments each day. The ALJ gave adequate credit to the asthma evidence when she included within the RFC that Plaintiff could have no more than occasional exposure to pulmonary irritants or excessive temperatures.

**Diabetes and Polyneuropathy; Hip Pain**

The ALJ found that Plaintiff's diabetes is a severe impairment, and it was among the reasons the ALJ found that Plaintiff is limited to performing light work, with some exceptions. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

Plaintiff argues that the ALJ erred when she did not find that diabetes and related polyneuropathy renders Plaintiff unable to perform light or even sedentary work.[1] Plaintiff bases this argument on her testimony at the hearing. Plaintiff testified that she gets insulin

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

from the hospital, but she admitted that she had not regularly checked her blood in the last month or so because she did not have the test strips. Plaintiff said her diabetes makes her legs hurt, and she can stand for "20, 30 minutes - - well 15, 10 minutes." Plaintiff said she then has to sit down, but could not sit even long enough to watch a 30-minute TV program before she has to stand again. Tr. 40-42.

Plaintiff testified that she used a cane for awhile, after her mother gave her one, but she quit using it after the rubber tip came off. Tr. 53. Plaintiff spoke of arthritis and cramps in her legs. She also said her hands and arms are numb about 25% of the time. She said she experienced constant pain, numbness, and tingling in her legs almost every day. Tr. 64. Plaintiff estimated that she could stand for 10 or 15 minutes at a time, for a total of two hours in a workday. She estimated that she could sit for 15 or 20 minutes at a time, for a total of an hour or two per workday. She said she could walk about 50 yards at one time. Tr. 68-69.

Plaintiff argues on appeal that the ALJ should have accepted her testimony about her sitting and standing limitations, which would exclude all work. She bases the limitations claim on her diabetes as well as hip and sacroiliac conditions that affect her ability to stand, sit, and walk.

In contrast to Plaintiff's testimony, her medical history indicates that her diabetes can be controlled with medication and, for the most part, has been controlled without complication. There is no evidence of related treatment in 2008, 2009, or 2011. Diabetes is mentioned at some visits, but usually when Plaintiff admitted that she had not been taking

her medications. Medications such as Mobic were prescribed to treat claims of leg pain. See, e.g., 241.

Plaintiff cites Exhibit 1-F (which includes 43 pages of records) and states that on May 13, 2012 she was noted to have sores on her great toes, which she suggests were caused by diabetes. The court has not located the referenced entry in those 43 pages, but there was a report on a visit on May 15, 2012 that Plaintiff "showed some onychomycosis on both great toes - terbinafine." This indicates that Plaintiff had nail fungus that was treated with the medicine often sold under the brand name Lamisil. Tr. 236.

Plaintiff argues that her use of a cane greatly limits her ability to use one of her arms, but Plaintiff testified that she used the cane only briefly and was no longer using it. Plaintiff complains that the ALJ acted arbitrarily in finding that she can use her left hand for handling frequently (one-third to two-thirds of the time), but she cites no particular medical evidence that would suggest a greater limitation.

The ALJ discussed Plaintiff's complaints of leg pain and noted that an X-ray of the hip revealed only mild degenerative changes, and examinations did not show a reduced range of motion or loss of muscle. Tr. 19. The ALJ acknowledged Plaintiff's testimony about her diabetes-related problems, but she noted that Plaintiff had admitted to periods of noncompliance with her medicine, there was no evidence of end organ damage, heart assessment had been essentially normal, and Plaintiff had not exhibited swelling, blurred vision, skin ulcerations, or other such problems. She had also not required emergency intervention for elevated sugar levels. Tr. 22-23.

There is substantial evidence to support the ALJ's assessment of the limitations related to diabetes. The medical records indicate a controlled or controllable condition with few serious problems reflected in the medical records. Plaintiff's testimony claimed much greater limitations, but the ALJ acted within her discretion to discount those claims in the face of contrary evidence. And it is not as if the ALJ ignored limitations related to diabetes. She found that the problems existed and limited Plaintiff to light work, with other limitations, but they were not as limiting as claimed by Plaintiff.

Plaintiff makes a related argument that the ALJ should have found that her hip and sacroiliac conditions caused her to be unable to perform any work. Plaintiff cites only X-rays from an August 29, 2012 visit. It was then that Plaintiff stated that her left hip/thigh had "really been bothering her" and that over-the-counter medications were not controlling her pain. The exam notes state that Plaintiff exhibited decreased range of motion and tenderness in her right hip, but she had normal strength and no swelling. Mobic was prescribed. An X-ray showed "degenerative changes of both hip joints with medial joint space narrowing seen." Sclerosis and cortical irregularity of the left SI joint was "suspicious for sacroiliitis." Tr. 239-43. Plaintiff apparently improved and continued to take medication for the issue. She does not point to any other evidence of significant limitations caused by this condition. The ALJ's decision that Plaintiff could perform the limited demands of light work (particularly jobs such as basket filler, counter clerk, document preparer, and election clerk) despite any hip pain she might suffer is supported by substantial evidence, primarily the lack of significant medical evidence to the contrary.

**Absences**

Plaintiff argues that she would have to be absent from work a minimum of two days per month, which the VE said would preclude jobs that are available in substantial numbers. Plaintiff does not point to any particular evidence to support this claim. The general assessment of her condition, described above, does not present evidence of such absences that is so compelling as to deprive the ALJ's decision of substantial evidence.

**Consultative Examination**

Plaintiff argues that the ALJ failed to properly develop the record because she did not order a consultative examination to resolve conflicts in the medical evidence or improve it where it was inconclusive. This argument is based on the ALJ's duty to fully and fairly develop the facts relative to a claim for disability benefits. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). Part of that development may include sending the claimant to a physician or other medical professional for a consultative examination. But "[t]he decision to require a consultative examination is within the discretion of the ALJ." Williams v. Shalala, 1995 WL 371053, *2 (5th Cir. 1995), citing Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991).

"An examination is required only if the ALJ cannot otherwise make a disability determination." Williams, citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). A claimant can obtain reversal only if she shows that she was prejudiced by the lack of a medical consultation. That requires a showing that, had the ALJ adequately performed her

duty, evidence could and would have been adduced that might have altered the result. Reynaud v. Astrue, 226 Fed. Appx. 401, 402 (5th Cir. 2007).

This was a fairly straightforward case in which Plaintiff's medical conditions were documented during the course of her treatments. There is no indication that the lack of additional documentation is due to anything other than Plaintiff not seeking treatment. There were no conflicts of medical opinion or unexplained gaps in the treatment history that might suggest a consultative examination was required to complete the record and allow a decision. The ALJ was within her discretion to not direct a consultation in this case. Furthermore, there is no showing that Plaintiff was prejudiced as a result.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed and that Plaintiff's complaint be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of February, 2017.

Mark L. Hornsby
U.S. Magistrate Judge